Appellant Randall J. Creech appeals from a judgment of the Miami County Common Pleas Court granting appellee Meijers' motion for summary judgment.
Creech advances three assignments of error. First, he contends the trial court erred by granting Meijers summary judgment on his "intentional tort" action. Next, Creech claims the trial court erred by granting Meijers summary judgment on his "bad faith" claim. Finally, he contends the trial court erred by granting Meijers summary judgment on his "breach of fiduciary duty" claim.
The present appeal stems from an injury Creech sustained while operating a "hi lo" forklift in the scope and course of his employment with the appellee, Meijers, Inc. While operating the forklift in a Meijers warehouse, Creech collided with another forklift at an intersection and suffered a crush injury to his leg. As a self-insured employer, Meijers processed a workers' compensation claim, which was allowed for the condition of "crush injury." Meijers subsequently compensated Creech for his missed work and paid some of his medical bills.
Thereafter, Creech filed a complaint against Meijers on August 23, 1996, alleging an intentional tort by his employer. Creech also alleged that Meijers acted in bad faith by failing to process and pay all of his bills. Furthermore, he alleged that Meijers breached a fiduciary duty by failing to investigate, process, and pay his bills and benefits. Finally, Creech alleged that Meijers engaged in "self dealing" by failing to make all bill payments.
The trial court granted Meijers' motion for summary judgment on the "bad faith" claim on July 31, 1997. Thereafter, on September 17, 1997, the trial court granted Meijers summary judgment on Creech's remaining claims. Creech then filed a timely notice of appeal advancing the following three assignments of error: I. "The trial court erred in granting summary judgment on plaintiff's first cause of action, intentional tort."
In his first assignment of error, Creech insists the record contains evidence creating a genuine issue of material fact about whether Meijer committed an intentional tort. Consequently, he contends the trial court erred by granting summary judgment in Meijers' favor.
After reviewing the record and relevant case law, however, we cannot agree. The material facts are not in dispute. Furthermore, even construing these facts in a light most favorable to Creech, we find as a matter of law that he cannot demonstrate an intentional tort committed by Meijers.
In his Meijers employment application, Creech professed prior experience driving forklifts for Emery Worldwide. He also represented that he could "drive any forklift made." At the time of his accident, Meijers had issued Creech a temporary permit to drive its "hi lo" forklifts. Creech also had passed written tests regarding Meijers' forklifts and other machinery. The temporary permit had expired approximately three months before Creech's accident, however, and he stated in his deposition that he told his supervisor he was unlicensed and had not been trained on the "hi lo." Nevertheless, Creech admitted in his deposition that he had received some orientation training, including warnings to keep his limbs inside the forklift. Furthermore, in an uncontroverted affidavit, Meijers supervisor Gerald Sutton stated that Creech was being trained on "wood detail" at the time of his accident because the task had no time pressure, and Creech would not be rushed. Sutton also averred that a person must learn to operate the "hi lo" forklift "by doing" because its control area only accommodates one person. Furthermore, Sutton averred that no one other than Creech had been injured while training on a forklift. He also stated that Creech had received the same training that other Meijers employees received. Creech presented no evidence refuting these claims. Furthermore, we note that Creech had operated the forklift for approximately nine hours before his injury.
Creech also alleged in his complaint and his deposition that the "hi lo" forklift's brakes were defective and improperly maintained. During his deposition, however, he admitted having no evidence to support his claim. Instead, he alleged only that the forklift failed stop as quickly as he thought it should have stopped. In response, Meijers provided affidavits and maintenance records establishing that the forklift regularly was inspected and repaired. Furthermore, the forklift was tested, and the brakes operated properly.
In Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100,116, the Ohio Supreme Court held that to establish an employer's intentional tort, a plaintiff must prove (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation, (2) knowledge by the employer that if the employee is subjected by his employment to the dangerous process, procedure, instrumentality, or condition, then harm to the employee will be a substantial certainty, and (3) that the employer, under such circumstances and with such knowledge, required the employee to continue to perform the dangerous task.
The Ohio Supreme Court subsequently clarified the foregoing requirements in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, stating:
 "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent."
Id. at paragraph two of the syllabus, modifying Van Fossen, supra, paragraph six of the syllabus. Furthermore, in Spates v. RichardE. Jones Assoc. (July 12, 1995), Montgomery App. No. 15057, unreported, this court noted that "[a]n intentional tort by an employer against an employee is defined very narrowly where the employee is covered by Ohio's workers' compensation laws." We also recognized that "a trial court must examine not only the employer's conduct but also the context in which the employer's conduct occurred. Id.
In his brief to this court, Creech argues that the existence of a licensing process for Meijers' forklift operators constitutes a tacit acknowledgment that the forklifts are "dangerous instrumentalities." Therefore, Creech contends he has met the first requirement of Van Fossen and Fyffe, supra. Furthermore, Creech relies upon a statement printed on Meijers' forklift operators' licenses as evidence that the store knew with "substantial certainty" that inadequately trained employees would be harmed. The statement reads: "Because of the potential severe safety hazards of operating equipment without proper training and licensing, it is a requirement to take the necessary test and received a license prior to operating the following equipment: * * * stand up HiLo." Creech also reiterates his argument that the forklift he operated was "ill maintained and defective." Finally, Creech notes his deposition testimony that his supervisor required him to operate the forklift on the day of his injury. Consequently, he argues that he presented evidence on all three elements discussed in Van Fossen and Fyffe, supra.
We find this argument unpersuasive. Construing the evidence in a light most favorable to Creech, we will assume that Meijers possessed knowledge of a potentially dangerous instrumentality on its premises, namely the "hi lo" forklift. As Creech notes, Meijers required licensing for its forklift operators and warned of potential safety hazards if forklifts were operated without proper training and licensing. In our view, these facts could be used to demonstrate Meijiers' recognition that its forklifts are dangerous instrumentalities. Consequently, Creech fulfilled the first prong of the Van Fossen and Fyffe test set forth above.
We cannot agree, however, that Creech created a genuine issue of material fact regarding Meijers' knowledge with substantial certainty that he would be injured if he operated the forklift. In reaching this conclusion, we find the record devoid of evidence supporting Creech's claim that the forklift's brakes were defective or that the forklift was maintained poorly. To the contrary, evidence in the record refutes these claims.
Furthermore, even assuming Creech's training somehow was inadequate, as he alleges, we find nothing in the record indicating that Meijers knew, to a degree of substantial certainty, that his accident would result. Indeed, Creech had represented to Meijer that he could drive "any forklift made." In addition, he had passed the two written tests required for the forklift operator's license, and he had been warned about keeping his limbs inside the machine. Creech also had been given a probationary operator's permit. Although the permit had expired, we cannot discern how such a fact would put Meijer on notice that an accident involving Creech was a substantial certainty. As the appellee notes in its brief, "under Appellant's theory, if Meijers had typed a different expiration date on his temporary license so that it was not expired at the time of the accident, then Meijers would not have intended the injury. No reasonable jury could ever believe that the mere date on a piece of paper (the probationary license) can dramatically change one's abilities to operate a piece of machinery." Additionally, we note that Creech had operated the forklift, apparently without incident, for many hours on the day of his injury. Creech also failed to identify any other person injured on a forklift, and a Meijers employee averred that no other injuries had occurred.
Moreover, we cannot agree with Creech's argument that Meijers' warning about the danger of driving a forklift without proper training and licensing demonstrates its knowledge with substantial certainty that his injury would occur. As we noted above, the warning contained on the forklift operator's license stated that "potential severe safety hazards" necessitated proper training and licensing. Creech uses this vague warning aboutpotential injury to establish that Meijers knew with substantialcertainty that his injury would occur. An employer's recognition of potential harm, of course, is not the same as recognition that the harm is substantially certain to occur.
In short, viewing the parties' conduct in the factual context described above, we agree with the trial court's finding that Creech has not raised a genuine issue of material fact on the intentional tort issue. As a result, the trial court properly granted Meijers' summary judgment motion, and we overrule Creech's first assignment of error.
 II. "The trial court erred in granting summary judgment on plaintiff's second cause of action, bad faith."
In his second assignment of error, Creech contends the trial court erred by granting Meijers summary judgment on his cause of action alleging bad faith in its handling of his workers' compensation claim. More specifically, Creech insists he presented the trial court with evidence showing that Meijers refused to pay his medical bills without first conducting any investigation and without justification.
In Balyint v. Arkansas Best Freight System, Inc. (1985),18 Ohio St.3d 126, the Ohio Supreme Court recognized an intentional tort cause of action when a self-insured employer intentionally and wrongfully terminates workers' compensation benefits ordered paid by the Industrial Commission. Subsequently, in Kokitka v.Ford Motor Co. (1995), 73 Ohio St.3d 89, 95, the court noted that when an employer acts in accordance with law, its actions, as a matter of law, do not constitute "bad faith." See also Hall v.Marion Power Shovel, Inc. (1992), 78 Ohio App.3d 23, 25. Consequently, Creech was required to present evidence showing that Meijers intentionally failed to follow Ohio's workers' compensation laws or violated some legal obligation in the handling of his workers' compensation claim. Kokitka, supra, at 94-95.
In the present case, Creech asserts only that some bills were not paid and that the bills related to treatment stemming from his leg injury. Furthermore, Creech insists that Meijers unilaterally decided not to pay the bills without conducting any investigation. In response, Meijers presented deposition testimony stating that the bills were not paid for two reasons. First, Meijers refused to pay for more than ten therapy treatments because they were not preapproved as required by O.A.C. sec. 4123-7-12(D). Second, the only allowed condition in Creech's workers' compensation claim was a "crush injury," with a diagnostic code of 928.9. The unpaid bills, however, were submitted for "non-allowed" conditions with different diagnostic codes or no codes at all. As Meijers properly notes, Ohio law does not require payment of medical bills for non-allowed conditions, and Creech may not be compensated for them. State ex rel. Bradley v. Industrial Comm. (1997), 77 Ohio St.3d 239,242.
In short, Creech has failed to present any evidence suggesting that Meijers intentionally violated any workers' compensation law or failed to pay his medical bills without some articulable justification. Furthermore, we find nothing in Ohio's workers' compensation laws imposing an obligation on Meijers to "investigate" Creech's claim. Furthermore, if Creech disputed Meijers' non-payment, he could have challenged its decision by adjudicating the matter within the Industrial Commission, an avenue he failed to pursue.
Having reviewed the record, we agree with the trial court's determination that no genuine issue of material fact exists on the issue of Meijers' bad faith. We simply find no evidence in the record suggesting that Meijers intentionally violated Ohio's workers' compensation laws or otherwise failed to pay Creech's medical bills without reasonable justification. Accordingly, we overrule Creech's second assignment of error.
 III. "The trial court erred by granting summary judgment on plaintiff's third cause of action, breach of fiduciary duty."
In his final assignment of error, Creech contends the trial court erred by granting Meijers summary judgment on his "breach of fiduciary duty" claim. Specifically, Creech contends a genuine issue of material fact exists regarding whether Meijers "carried out its duties of investigating, processing, and paying" his medical bills.
We find this argument unpersuasive. Even assuming arguendo
that Meijers is not immune from liability[1] and that some fiduciary duty existed, issues Meijers contests, we find no genuine issue of material fact concerning Meijers' breach of its alleged duties. Meijers' only duties were to submit Creech's claim to the Bureau of Workers' Compensation, to process his medical bills, and to pay those bills warranting payment based upon the information Creech provided. We find nothing in the record suggesting that Meijers failed to fulfill these responsibilities, and we find no breach of any fiduciary duty, assuming that such a duty existed. Accordingly, we overrule Creech's third assignment of error and affirm the trial court's judgment.
Judgment affirmed.
WOLFF, J. and FAIN, J., concur.
Copies mailed to:
Alfred J. Weisbrod
Gary T. Brinsfield
D. Patrick Kasson
Hon. Jeffrey M. Welbaum
[1] See Strock v. Pressnell (1988), 38 Ohio St.3d 207,216 (noting that "[a] claim for breach of fiduciary duty is basically a claim of negligence"); Blankenship v.Cincinnati Milacron Chemicals, Inc. (1982), 69 Ohio St.2d 608,614 (noting that Ohio's workers' compensation system "is based on the premise that an employer is protected from a suit for negligence * * *").