DECISION
Relator, Christine L. Davis, filed this action seeking a writ of mandamus directing the Industrial Commission of Ohio ("commission") to vacate its order denying her application for temporary total disability ("TTD") compensation, and to issue a new order either granting or denying her application and which complies with the requirements set forth by the Ohio Supreme Court in State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
On December 13, 2001, relator's complaint was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M). After reviewing the briefs, stipulated record, and argument of counsel, the magistrate rendered a decision which includes comprehensive and appropriate findings of fact and conclusions of law. (Attached as Appendix A.) Specifically, the magistrate concluded that this court should grant a limited writ of mandamus directing the commission to correct a mistake of fact concerning the dates and medical records from St. Charles Hospital relating to July 1993 and July 1994. The matter is now before the court upon relator's and respondent Northwest Ohio Developmental Center's objections to that decision and recommendation.
The objections to the contrary, having reviewed the matter, this court concludes that the magistrate discerned the pertinent legal issues and properly applied the law to those issues. Having completed our review, we have found no error in either the magistrate's decision or analysis. The objections to the magistrate's decision are therefore overruled.
Accordingly, we hereby adopt the magistrate's April 30, 2002 decision as our own, including the findings of fact and conclusions of law set forth therein. In accordance with the magistrate's decision, we hereby grant a limited writ of mandamus instructing the commission to vacate its previous order, and to issue a new order either granting or denying the requested periods of TTD and which complies with Noll, supra.
Objections overruled; limited writ granted.
BRYANT and DESHLER, JJ., concur.
 APPENDIX A IN MANDAMUS
Relator, Christine L. Davis, filed this original action asking the court to compel respondent Industrial Commission of Ohio to vacate its order denying compensation for temporary total disability ("TTD") and to issue an order that grants the requested compensation, or, in the alternative, an order that complies with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Findings of Fact:
1. In June 1993, Christine L. Davis ("claimant") sustained an industrial injury, and her workers' compensation claim was allowed for bruised shoulders and head, and herniated cervical discs. Compensation for TTD was awarded.
2. Prior to her industrial injury, claimant had been hospitalized many times due to paranoid schizophrenia.
3. On July 22, 1993, claimant was admitted to St. Vincent Hospital, where her diagnosis was "schizo-affective illness."
4. Claimant returned to work on May 2, 1994, at which time TTD compensation ended. On May 24, 1994, claimant stopped working, and TTD compensation was reinstated.
5. On July 20, 1994, claimant was admitted to the Toledo Mental Health Center ("TMHC") with a diagnosis of chronic paranoid schizophrenia. She was discharged in September 1994.
6. In December 1994, claimant's physician reported that the allowed physical conditions had reached maximum medical improvement ("MMI"). TTD compensation was terminated by order of the Bureau of Workers' Compensation.
7. In July 1995, claimant filed a motion to allow her claim for an additional condition, schizo-affective illness. She also sought TTD compensation, filing the records of her 1994 psychiatric hospitalization in support.
8. In October 1995, claimant was evaluated by Kay Pritscher, Ph.D., who observed that claimant had suffered from the psychiatric condition for many years, since 1979, with many hospitalizations prior to her industrial accident in June 1993. Dr. Pritscher stated that it appeared that the industrial accident had temporarily aggravated the preexisting psychiatric condition but that the work-related psychiatric condition had reached MMI and did not prevent working at the former position of employment.
9. In October 1995, the bureau allowed the claim for aggravation of preexisting schizo-affective disorder but denied the requested TTD compensation based on Dr. Pritscher's report.
 * * * [Y]our C-86 motion, filed 7-18-95 is granted for additional conditions of emotional condition 295.70 and medical bills to be paid.
 Compensation is denied per medical exam of Dr. Pritscher, dated 10-12-95, states that the condition was pre-existing many years prior to her industrial injury but was aggravated by the injury. She has reached maximum medical improvement. The condition does not prevent her from returning to her former employment.
Claimant did not pursue an appeal.
10. In March 1996, claimant filed a motion seeking to allow her claim for "major depression recurrent with psychosis, psychosis in remission secondary to the allowed condition of aggravation of pre-existing schizoid affective disorder (295.70)." She also sought TTD for the hospitalization from July 1994 to September 1994.
11. On October 24, 1996, claimant was committed to TMHC pursuant to order of the probate court. Claimant was brought to the hospital involuntarily by a rescue squad, with her husband indicating that claimant had not taken her medication and had become violent. The diagnosis was chronic paranoid schizophrenia with inter-episode residual symptoms. Claimant was discharged in November 1996. The discharge summary stated that, because claimant was not willing to accept medication, she was "referred back to Rescue." None of the medical records mention the June 1993 industrial accident.
12. From March 11, 1997, to April 11, 1997, claimant was hospitalized at St. Charles Hospital, with a diagnosis of "schizophrenia, chronic, paranoid type."
13. In October 1998, claimant filed a request for TTD for her period of hospitalization in October/November 1996. The request was dismissed due to a defect, and claimant refiled it in February 1999.
14. In February 1999, claimant filed a request for TTD for the hospitalization in March/April 1997, and also for TTD commencing June 24, 1997 and continuing. In addition, claimant asked the commission to adjudicate the pending motion to allow "major depression" and to reconsider TTD for the 1994 hospitalization, which had previously been denied based on then-allowed conditions.
15. In November 2000, a district hearing officer rendered a decision. In January 2001, the appeal was heard by a staff hearing officer, who vacated the district hearing order and ruled as follows:
 * * * [T]he C-86, filed 2/10/99, is denied and the C-86's, filed 2/12/99 and 3/14/96, are granted to the extent of this Order.
* * *
 The Staff Hearing Officer grants Temporary Total Disability Compensation from 7/20/94 through 9/19/94. Claimant returned to work 9/20/94. This portion of the Order is based upon the C-84 of Doctor Lenz dated 9/23/94.
 The Staff Hearing Officer DISALLOWS the condition of: Major depression recurrent with _psychosis, psychosis in remission.
 The Staff Hearing Officer DISALLOWS Temporary Total Disability Compensation from 10/24/96 through 11/12/96; 3/11/97 through 4/11/97; and 6/27/97 through 10/26/2000.
* * *
 The * * * claim is already allowed for "aggravation of pre-existing schizo-affective disorder (295.70) * * * based upon the report of Doctor Pritscher (10/12/95). At that time, Doctor Pritscher opined that the claimant had already reached maximum medical improvement as a result of the aggravation caused by the injury.
 The 12/11/95 report of Doctor Claxton indicates a different psychological diagnosis (the one disallowed herein), and also states the claimant was currently stabilized:
 There is no question that the claimant had a long-standing pre-existing psychotic and/or schizo-affective disorder, nor that it was aggravated by the injury in 1993 resulting in the hospitalization in September 1994. However, the Staff Hearing Officer finds insufficient persuasive psychological/psychiatric evidence that the subsequent exacerbations and/or aggravations in 1995 and 1997-2000 were in any way causally related to this injury. The aggravation from this injury had become stabilized by 1995, and despite the conclusory opinions of Doctor Evans, no real explanation of the triggers for these episodes is given, notwithstanding any persuasive opinion relating the later episodes in any way to the injury in 1993.
 In fact, the St. Charles Discharge Summary from 3/11/97 specifically states that, "Poor compliance was the main problem which resulted into severe decompensation." There is no mention of the 6/27/93 industrial injury.
 Therefore, given the claimant's prior history of problems and treatments, the Staff Hearing Officer finds the episodes in 1996, 1997, and into 2000 are not related to the injury herein.
 This Order is based upon the C-84 of Doctor Lenz (9/23/94), the records of St. Charles Hospital (7/22/93, 7/20/94, and 3/11/97.) [Emphasis in original.]
Conclusions of Law:
Claimant challenges the denial of three periods of TTD compensation. The issue before the court is whether the commission cited "some evidence" to support its decision and whether the order provided an adequate explanation of the commission's rationale. Noll, supra.
TTD compensation is paid while an injured worker recovers sufficiently to return to the former position of employment. See State ex rel. Bunch v. Indus. Comm. (1980), 62 Ohio St.2d 423. When the claimant has reached MMI, she is no longer eligible for TTD compensation. R.C. 4123.56(A)
However, a termination of TTD compensation does not prevent a subsequent award of TTD compensation if circumstances change and the claimant experiences a flare-up of the allowed condition that temporarily and totally disables her. State ex rel. Bing v. Indus. Comm. (1991),61 Ohio St.3d 424. In addition, TTD may be based on a newly allowed condition until it reaches MMI. State ex rel. Basye v. Indus. Comm. (1992), 64 Ohio St.3d 68.
In the present action, the parties focus on five periods of time, as follows:
 1. July 1993 St. Vincent hospitalization No issue of TTD.
2. July-Sept. 1994 TMHC hospitalization TTD granted.
3. Oct.-Nov. 1996 TMHC hospitalization TTD denied.
4. March/April 1997 St. Charles hospitalization TTD denied.
5. from June 1997 No hospitalizations TTD denied.
and continuing
Claimant disputes the denials of TTD listed above, setting forth several arguments: (1) that a termination of TTD compensation based on MMI does not prevent a subsequent TTD award; (2) that the January 2001 order does not comply with Noll, supra, because it does not provide an adequate rationale; and (3) that an order supported by no evidence constitutes an abuse of discretion.
First, it is well established that TTD can be reinstated under certain circumstances, as set forth in Bing, supra, and other decisions. However, the order shows that the commission applied the correct principles of law. The commission, finding medical evidence that the 1994 hospitalization was caused by an allowed condition, awarded TTD for the period from July 1994 to September 1994.
In discussing the later periods of time, the commission clearly imposed no bar based on the prior termination of TTD but simply addressed whether the medical evidence demonstrated that the new periods of TTD were causally related to the industrial injury. The commission applied the correct legal principles but simply found that claimant's medical evidence did not meet her burden of proof.
In regard to her third argument, claimant apparently contends that her chronic psychiatric illness, which is not allowed in the claim, cannot bar her receipt of TTD for a period of psychiatric disability caused by the industrial injury. This proposition of law is correct. The presence of nonallowed conditions does not defeat or advance a request for disability compensation. State ex rel. Stone Container v. Indus. Comm. (1997), 79 Ohio St.3d 163; State ex rel. Bradley v. Indus. Comm. (1997),77 Ohio St.3d 239. The issue is whether the industrial injury caused the subject period of TTD without regard to nonallowed conditions. Id. The Ohio Supreme Court has made clear that the commission cannot compensate claimants unless their disability "results exclusively from an allowed condition." State ex rel. Chrysler Corp. v. Indus. Comm. (1998),81 Ohio St.3d 158. Further, the claimant has the burden of proving a direct and causal relationship between the conditions allowed in the claim and the period of disability. Id.
The magistrate finds no misapplication of the law. In the subject order, the commission focused on the question of whether there was medical evidence to show that each period of disability was caused by the industrial injury. Each award, or denial, of compensation was based on a determination of whether claimant proved that her industrial injury caused the period of disability. For example, the commission found that the hospitalization in 1994 was triggered by the industrial injury and accordingly granted TTD for that period. In contrast, the commission found that there was insufficient evidence to show that the episodes in 1996, 1997 and into 2000 were causally related to the industrial injury.
The magistrate rejects the proposition that, once an industrial injury occurs, every subsequent episode of disability is necessarily caused by the industrial injury. On the contrary, claimant must provide medical evidence that each period of disability was caused by the allowed condition in and of itself, independent of nonallowed conditions. The aggravating effect of an industrial injury may or may not subside. In other words, there may be situations where an industrial injury causes TTD for a while but then ceases to cause further TTD; in such cases, subsequent periods of disability may result from a nonallowed condition that existed prior to the injury or one that arose afterward. The key is whether the medical evidence establishes that the allowed condition has caused a particular period of TTD.
Because the magistrate finds no legal error in the order, this action depends on whether the commission cited "some evidence" to support its decision and provided an adequate rationale. The magistrate finds that, although the commission cited evidence, its citation includes a clear mistake of fact, as follows:
 This Order is based upon the C-84 of Doctor Lenz (9/23/94), the records of St. Charles Hospital (7/22/93, 7/20/94, and 3/11/97.)
The parties agree that there were no records from St. Charles Hospital relating to July 1993 or July 1994. Thus, the citation is erroneous. Although the error may have been merely clerical in nature, the magistrate notes that the evidence in this matter is voluminous and complex. The court cannot be reasonably sure that the error was merely a "scrivener's error" rather than a mistaken understanding of the evidence. The magistrate concludes that claimant has established an abuse of discretion in the listing of the evidence on which the commission relied, and a limited writ is warranted.
Last, the magistrate addresses the contention that, for the period from June 1997 through 2000, there was no medical evidence on which the commission could affirmatively rely and it was therefore required to grant the 1997-2000 period of TTD because Dr. Evans' opinion was uncontroverted. The magistrate disagrees. The general rule is that the commission is not required to explain why it rejected any evidence, or even to identify the evidence it rejected. State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575. However, when the commission rejects uncontroverted evidence rather than relying on opposing evidence, the commission must explain why it rejected the uncontro-verted evidence. Here, the commission described the evidence that it rejected and provided a brief explanation. The commission explained that it was rejecting Dr. Evans' opinions as to one time period (while accepting his opinion for earlier time periods) because his opinions were conclusory and he did not establish the requisite causal connection between the industrial injury and the disability.
The commission was not obliged to accept Dr. Evans' uncontroverted reports as long as it provided a lawful reason for rejecting them, which it did. The magistrate concludes that the commission was within its discretion to find Dr. Evans' conclusory statements unpersuasive.
The magistrate recommends that the court grant a limited writ of mandamus, returning this matter to the commission to vacate its order of January 2001 and to issue an order granting or denying the requested periods of TTD in an order that complies with Noll and other applicable law.